# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff-Respondent,* | § | |
| | § | Criminal No. 4:18-68-6 |
| v. | § | (Civil No. 4:24-4819) |
| | § | |
| TOCHUKWU NWOSISI | § | |
| *Defendant-Movant* | § | |

## UNITED STATES' RESPONSE TO
## NWOSISI'S 28 U.S.C. § 2255 MOTION

The United States respectfully requests this Court deny Tochukwu

Nwosisi's motion under 28 U.S.C. § 2255, without an evidentiary hearing

or certificate of appealability. He raises four claims: three claims of

ineffective assistance of counsel against his trial defense counsel and one

claim of actual innocence.[1] Doc. 816[2] (§ 2255 motion); Doc. 816-1 (§ 2255

---

[1] In his § 2255 motion, Nwosisi does not identify which of his multiple defense counsels he raises his ineffective-assistance claims against. For the time period following the second superseding indictment but before trial, Nwosisi was represented by the following: Attorney Thomas Brent Mayr, Attorney K. Omari Fullerton, and Attorney James Stafford. Nwosisi also proceeded *pro se* for part of this time period. During trial, Nwosisi was represented by Attorney James Stafford and Attorney Thomas Brent Mayr.

[2] "Doc. __" refers to the numbered documents in the docket for No. 4:18-CR-68-6; page citations are to the page numbers identified in the document's ECF header. "PSR ¶ __" refers to the paragraphs in the Presentence Investigation Report, filed June 3, 2024. Doc. 741. "Guidelines" and "U.S.S.G." refer to the 2023 version of the U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2023). PSR ¶ 64.

supplement); *see* Docs. 819, 823 (order for the Government's § 2255 response).[3]

Because the record conclusively shows Nwosisi cannot obtain relief on any of these claims, his § 2255 motion should be denied. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983).

## I.    Factual background.[4]

From October 2014 until October 2018, Nwosisi, codefendant Uche Diuno, and several other co-conspirators participated in various Nigeria-based fraud schemes. PSR ¶¶ 13–60.

Nwosisi's role in the fraud schemes related to the movement of victim funds. PSR ¶¶ 20–21, 29, 31, 57–60. As the owner of a used car dealership in Indiana, Nwosisi knowingly used his bank accounts to receive victim funds from the fraud schemes. PSR ¶¶ 20–21, 29, 31, 57–

---

[3] One day before the Government's deadline to file its § 2255 response, on April 16, 2025, Nwosisi filed a motion to amend his § 2255 motion, which raises a new § 2255 claim challenging the restitution in his sentence. Doc. 824. The Court has not yet ordered the Government to respond to this new § 2255 claim. *See* Docs. 819, 823 (ordering the Government to respond to Doc. 816). Thus, the Government is not responding to this new § 2255 claim here, but it also is not waiving the ability to do so should the Court order. In any event, it is likely that Nwosisi's new § 2255 claim regarding restitution is procedurally defaulted because he could have raised it on direct appeal but did not do so, *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001), as well as non-cognizable under § 2255, *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999).

[4] The facts come from the PSR, which the Court adopted at sentencing. PSR ¶¶ 13–60; *see* Doc. 807 at 24.

60. Upon receiving these victim funds, he would wire them to numerous individuals and companies in the United States and overseas, as well as use them to purchase and export cars to Nigeria. PSR ¶¶ 20–21, 29, 31, 57–60. He then retained a portion of the fraud proceeds for himself. PSR ¶¶ 57–60.

Nwosisi communicated with several co-conspirators using phone calls, emails, and chat and texting applications. PSR ¶¶ 20–21, 29, 31, 57–60. He also provided the information for his financial accounts to his co-conspirators for validation. PSR ¶¶ 20–21, 29, 31, 57–60.

For example, from June to July 2016, Nwosisi and Diuno engaged in the following communications regarding the transfer of victim funds:

| June 7, 2016 | • Diuno wrote to Nwosisi: "Too hope ur BOA is still very good."<br>• Diuno sent to Nwosisi the information for a Bank of America account ending in 2872, in the name of Nwosisi's car company.<br>• Nwosisi responded with the information for a Wells Fargo account ending in 2697, in the name of his car company. |
|---|---|
| July 6, 2016 | • Diuno sent to Nwosisi the same account information for the Wells Fargo account ending in 2697 and wrote: "Hope is still good."<br>• Nwosisi responded: "Yes." |
| July 7, 2016 | • Diuno wrote to Nwosisi: "Too check ur mail" and "$26k paid in Wells Fargo bank." |

| | |
|---|---|
| July 8, 2016 | • Nwosisi wrote to Diuno: "It's in." |

PSR ¶ 58.

In another example, from August until December 2017, Nwosisi and Diuno engaged the following communications regarding the transfer of victim funds:

| | |
|---|---|
| August 8, 2017 | • Diuno wrote to Nwosisi: "How ur account is OK."<br>• Diuno sent to Nwosisi the information for a BMO Harris account ending in 0638, in the name of Nwosisi's car company.<br>• Nwosisi responded: "Yes."<br>• Diuno responded: "OK" and "I gave it to Osondu."<br>• Nwosisi responded: "Ok, good." |
| December 5, 2017 | • Diuno sent to Nwosisi the information for a Bank of America account ending in 6437.<br>• Diuno then wrote to Nwosisi: "Too pls tyl and send $5k to this account today for them today" and "He said if this account can take up to $200k" and "Be am working him to give us big transactions instead him using other people." |
| December 6, 2017 | • A $5,000 check was drawn from Nwosisi's account at BMO Harris ending in 0638 and deposited into a Bank of America account ending in 6437.<br>• Diuno wrote to Nwosisi: "U will do $121,500 to Nigeria then send $500 for me here before hunger go kill me." |

PSR ¶ 59.

## II.    Procedural history.

### A.    Second superseding indictment.

A grand jury returned a second superseding indictment charging two counts against Nwosisi. Doc. 165. Count 4S charged Nwosisi, Diuno, and another codefendant with conspiracy to launder monetary instruments from around October 2014 through around October 3, 2018, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and § 1957. Doc. 165 at 10–12. Count 7S charged Nwosisi and Diuno with aiding and abetting in the concealment of money laundering on or about December 6, 2017, specifically relating to a $5,000 check drawn on a BMO Harris account into a Bank of America account, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and § 2. *Id.* at 13.

### B.    Trial.

Nwosisi's trial lasted five days. Docs. 689–93, 780–83. For its case-in-chief, the Government presented the following witnesses: James Kim; Elizabeth Leeds; Paul Elliott; Diuno; Maricela Ferretiz; Lori Vernia; Dulce Marroquin; Lidia Banda; Manon Sherri Randle; and Agent James Spaulding, Office of Inspector General, U.S. Department of State. *Id.*

5

After the Government rested, Nwosisi orally motioned for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the Court denied. Doc. 692 at 59. Nwosisi then made a motion to continue trial so that Attorney Allan Reid (Nwosisi's former defense counsel during his proffer in 2018) could testify, which the Court denied. *Id.* at 60–67. Nwosisi presented no witnesses and rested. *Id.* at 67–70.

The Government and Nwosisi presented closing arguments. Doc. 693 at 30–99. Later that afternoon, the jury returned a guilty verdict for Nwosisi as to Counts 4S and 7S. *Id.* at 111–13.

### C.    Sentencing.

At sentencing, this Court found Nwosisi's Guidelines range was 37-to-46 months, based on a total offense level of 21 and criminal history category of I. Doc. 807 (sentencing); *see* Doc. 741 (PSR); Doc. 742 (PSR addendum). The Court imposed concurrent sentences of 36 months on Counts 4S and 7S. *Id.* at 23–33; *see* Doc. 766 (judgment).

This Court (Bennett, J.) imposed judgment on June 13, 2024, which the clerk entered on June 27, 2024. Doc. 766.

### D.    Direct appeal.

On June 13, 2024, Nwosisi, represented by counsel, timely filed a notice of appeal. Doc. 748. On September 4, 2024, Nwosisi, represented

by counsel, filed an unopposed motion to dismiss appeal.[5] On September 5, 2024, the Fifth Circuit granted Nwosisi's motion and dismissed his appeal. Doc. 813.

## III.    Nwosisi's instant motion under 28 U.S.C. § 2255.

On November 25, 2024, Nwosisi, proceeding *pro se*, timely filed with this Court the instant motion to vacate, set aside, or correct the sentence under § 2255. Doc. 816-1 (§ 2255 supplement); *see* Doc. 816 (§ 2255 motion). He raises four claims:

1) Counsel was ineffective for failing to adequately investigate before trial, *id.* at 2–7;

2) Counsel was ineffective for failing to object to the second superseding indictment, *id.* at 2–4, 7–9;

3) Counsel was ineffective for failing to demand a Bill of Particulars*, id.* at 2–4, 8–11;

4) Actual innocence, *id.* at 11–12.[6]

Because the record conclusively establishes these claim are without merit, this Court should deny Nwosisi's § 2255 motion.

---

[5] Fifth Circuit Case No. 24-20267, Document Number 53.

[6] In his § 2255 motion, Nwosisi's second and third § 2255 claims overlap. The Government has reframed them to align with established constitutional claims. *See United States v. Robinson*, No. CRIM.A. 09-00145-BAJ, 2014 WL 5778058, at *2 n.1 (M.D. La. Nov. 5, 2014).

## IV.  This Court should deny Nwosisi's motion under 28 U.S.C. § 2255.

### A.  Applicable law.

#### 1.  28 U.S.C. § 2255.

A prisoner in federal custody may collaterally challenge his conviction by "mov[ing] the court which imposed the sentence to vacate, set aside, or correct the sentence." § 2255. Challenging a conviction and sentence under § 2255, however, is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992).

Motions under § 2255 only may seek relief for particular types of errors. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* "Other types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." *Id.* (emphasis in original). Thus, a claim asserted in a § 2255 motion is procedurally defaulted if it could have been raised on direct appeal but was not. *Id.*; *see United States v. Willis*, 273 F.3d

592, 595 (5th Cir. 2001). As such, a motion under § 2255 "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

Because Nwosisi is proceeding *pro se*, his pleadings are reviewed under a less stringent standard than those drafted by an attorney and are entitled to be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). A *pro se* litigant, however, still must provide sufficient facts in support of her claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in [her] *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### 2.    Ineffective assistance of counsel.

To succeed on a claim of ineffective assistance of counsel in a § 2255 motion, a defendant must meet both parts of the *Strickland* test. *See United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995). Under *Strickland*, he must show: (1) counsel's performance was deficient, meaning "fell below an objective standard of reasonableness"; and (2) this

performance prejudiced the defendant, meaning a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687–88, 694.

Counsel's performance carries a "strong presumption" of falling within the "wide range" of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome this, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 121–22. "[T]he standard for judging counsel's representation is a *most deferential* one." *Id.* at 122 (emphasis added). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms.' " *Id.* Mere disagreement with counsel's strategy is insufficient to show ineffective assistance. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

"Prejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina,* 262 F.3d 472, 474 (5th Cir. 2001). To establish prejudice, "the defendant must show 'that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.' " *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694). In the context of a trial, this means the defendant must show a reasonable probability that, but-for counsel's errors, he would have been acquitted. *See Henderson v. Cockrell*, 333 F.3d 592, 602 (5th Cir. 2003).

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 668). If this Court can conclude, as a matter of law, that the movant "cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary and [it] may affirm." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

### B.   Nwosisi's first claim fails.

In his first § 2255 claim, Nwosisi argues his defense counsel was constitutionally ineffective for failing to adequately investigate based on two specific grounds. Doc. 816-1 at 2–7. First, defense counsel failed to subpoena Attorney Alan Reid, who would have "directly contested the

existence of notes supposedly taken by Agent Spalding during [Nwosisi's] proffer session." *Id.* at 5. Second, defense counsel failed to investigate Diuno, which would have revealed information to impeach him at trial. *Id.* at 6–7. This § 2255 claim is baseless.

Defense counsel must "conduct a reasonable amount of pretrial investigation." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). "[T]o succeed on a claim for failure to investigate, a defendant 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.' " *United States v. Bernard*, 762 F.3d 467, 477 (5th Cir. 2014) (quotation marks omitted).

"[C]ounsel is not required to pursue every path until it bears fruit or until all conceivable hope withers." *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983) (quotation marks omitted). "[W]hile a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." *Id.* "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Harrington v. Richter*, 562 U.S. 86, 108 (2011). A "failure to

investigate can be constitutionally deficient only if it resulted in the exclusion of competent evidence." *United States v. Drones*, 218 F.3d 496, 502 (5th Cir. 2000).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the contents of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*

First, the record undermines Nwosisi's argument regarding his defense counsel's ineffectiveness for failing to subpoena Attorney Reid. The record shows: (1) defense counsel thoroughly cross-examined Agent Spalding regarding Nwosisi's admissions at his proffer; and (2) defense counsel reasonably tried to subpoena Attorney Reid before trial and even tried to continue trial so Attorney Reid could testify.

On the fourth day of trial, Nwosisi's defense counsel conducted a cross-examination and recross-examination of Agent Spalding. Doc. 692 at 6–39, 54–57. On cross-examination, Agent Spalding stated: Nwosisi "never told [him] in a recorded statement that he knew that any of these funds that were put in his account were from some illegal source or scam." *Id.* at 7. More importantly, Agent Spalding provided extended testimony concerning Nwosisi's proffer, including the lack of recording at the proffer, Attorney Reid's presence at the proffer, Agent Spalding's taking of notes at the proffer, and Nwosisi's denial that he admitted to knowingly moving victim funds through different financial accounts and car purchases at the proffer. *Id.* at 8–11.

Later, after the Government rested, defense counsel made a motion to continue trial, based on an unsworn declaration by Attorney Reid contradicting Agent Spalding's testimony regarding Nwosisi's admission at the proffer and based on the Defense's unsuccessful attempt to subpoena Attorney Reid for trial:

> Fast forward to 2023. Mr. Stafford, my co-counsel, in anticipation of our trial, our scheduled trial date contacted Mr. Reid and told him we have a trial date scheduled in February, we need to have you available, and that was the -- and that he would reach out as we got closer to the date to arrange for a subpoena.

As we got closer to our trial date, I believe it was within the last week, Mr. Stafford made efforts to have a process server serve Mr. Reid with a subpoena. And when the process server in Indiana went to serve him, discovered that he was out the country.

We have been in constant communication with his office letting him know there is a possibility that we would need him to testify. And his support staff, Mr. Reid's support staff, indicated he would be returning from New Zealand, where he is out the country, on March the 4th, which would be Monday.

We tried to get details as to when he would return or not return, but that is all we know.

As the unsworn declaration affirms, in addition to him being out of the country, he does recall this interview. And it is his recollection that, contrary to the testimony of Agent Spalding, Mr. Nwosisi did not make any assertions that he was aware of the source of the funds being illegal at the time.

*Id.* at 61–62. Ultimately, the Court denied defense counsel's motion to continue. *Id.* at 67.

As such, Nwosisi cannot meet his burden under either *Strickland* prong. First, Nwosisi is unable to overcome the "strong presumption" that defense counsel's performance fell within the "wide range" of reasonable professional assistance. *See Premo*, 562 U.S. at 121. Defense counsel acted reasonably: he cross-examined Agent Spalding regarding Nwosisi's alleged admissions at the proffer, and he tried to subpoena Attorney Reid

before trial and even tried to continue trial so Attorney Reid could testify. And claims regarding uncalled witnesses are disfavored under § 2255. *See Day*, 566 F.3d at 538. Second, Nwosisi cannot show prejudice, meaning there is a reasonable probability that, but-for counsel's supposed errors, he would have been acquitted. *See Henderson*, 333 F.3d at 602. This also is established by defense counsel's attempt to subpoena Attorney Reid and to continue trial, as well as his cross-examination of Agent Spalding regarding Nwosisi's alleged admissions at his proffer. In fact, any testimony by Attorney Reid likely would have been cumulative to this cross-examination. Nwosisi's argument regarding defense counsel failure to subpoena Agent Spalding fails.

Second, the record belies Nwosisi's argument regarding his defense counsel's ineffectiveness for failing to adequately investigate Diuno for information to impeach him at trial. Over the second and third days of trial, defense counsel extensively cross-examined and recross-examined Diuno. Doc. 690 at 131–64; Doc. 782 at 5–69, 91–98. This showed defense counsel's familiarity with Diuno's direct testimony and the Government's evidence, as well as numerous instances where defense counsel impeached Diuno's credibility. *Id.*

As a result, Nwosisi cannot meet his burden under either *Strickland* prong. First, he cannot show deficient performance. He is unable to overcome the "strong presumption" that defense counsel's performance fell within the "wide range" of reasonable professional assistance. *See Premo*, 562 U.S. at 121. Defense counsel acted reasonably, as demonstrated by his extensive cross-examination of Diuno at trial, which included familiarity with Diuno's direct testimony and the Government's evidence, as well as numerous instances of impeaching Diuno's credibility. Second, Nwosisi cannot show prejudice, meaning he must show a reasonable probability that, but-for counsel's supposed errors, he would have been acquitted. *See Henderson*, 333 F.3d at 602. This also is established by defense counsel's cross-examination of Diuno, which the jury heard and considered in reaching its guilty verdict. Nwosisi's argument regarding defense counsel's failure to investigate Diuno fails. *See United States v. Echols*, No. CV H-15-3235, 2016 WL 3926483, at *6 (S.D. Tex. July 18, 2016) ("Contrary to Echols' allegation that his defense counsel failed to prepare for trial, the record shows that his attorney was familiar with the extensive documentary evidence and that he competently cross-examined all of the government's witnesses.").

### C.   Nwosisi's second claim fails.

In his second § 2255 claim, Nwosisi contends defense counsel was constitutionally ineffective for failing to object to his second superseding indictment. Doc. 816-1 at 2–4, 7–9. First, he contends defense counsel failed to challenge the legal sufficiency of Counts 4S and 7S. *Id.* at 7–9. Second, he contends defense counsel failed to subject Diuno and the "government's witnesses or evidence to the adversarial test[.]" *Id.* at 7–8. This § 2255 claim is unconvincing.

First, any challenge by defense counsel to the legal sufficiency of the Counts 4S and 7S would have been meritless. "An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of multiple prosecutions for the same offense." *United States v. Sims Bros. Constr., Inc.*, 277 F.3d 734, 741 (5th Cir. 2001) (quotation marks omitted). "An indictment that tracks a statute's words is generally sufficient as long as those words fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Arlen*, 947 F.2d 139, 145 (5th Cir. 1991) (quotation marks omitted). "In other

words, the language of the statute may guarantee sufficiency if all required elements are included in the statutory language." *Id.*

In this case, Counts 4S and 7S are legally sufficient because they contain the elements of the charged offenses and track the relevant statutory language. Count 4S alleged:

29.    Beginning in or around October 2014 and continuing through in or about the date of the Indictment, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**UJU OKIGBO,**
**TOCHUKWU NWOSISI,**
and
**UCHE VICTOR DIUNO**

with others known and unknown to the Grand Jury, knowingly conspired, combined, and agreed to commit the following offenses in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

a.   to knowingly conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, involving the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity constituting a felony under state or federal law, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.   to knowingly engage and attempt to engage, within the United States, in monetary transactions in criminally derived property of a value greater than $10,000, such funds involving the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343 and in violation of Title 18, United States Code, Section 1957.

Doc. 165 at 10. Count 7S alleged:

33.     On or about the following dates, in the Houston Division of the Southern District

of Texas, and elsewhere, the following defendants, conducted, attempted to conduct, aided and

abetted others to conduct, and willfully caused others to conduct the following financial

transactions, affecting interstate and foreign commerce, that in fact involved the proceeds of a

specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code,

Section 1343, knowing that (a) the property involved in the transactions represented the proceeds

of some form of unlawful activity constituting a felony under state or federal law, and (b) the

transactions were designed in whole and in part to conceal and disguise the nature, location,

source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | DEFENDANTS | FINANCIAL TRANSACTION |
|-------|------|------------|----------------------|
| FIVE | January 26, 2015 | **UJU OKIGBO** | Purchase of cashier's check made out to I.O. in the amount of $15,000 from BB&T account ending in 3778 with memo line "Payment for 2010 Honda Crosstour" |
| SIX | September 15, 2016 | **UJU OKIGBO** | Purchase of cashier's check made out to auto broker in the amount of $17,844 from Bank of America account ending in 7028 |
| SEVEN | December 6, 2017 | **TOCHUKWU NWOSISI** and **UCHE VICTOR DIUNO** | Deposit of $5,000 check drawn on BMO Harris account ending in 0638 into a Bank of America account ending in 6437 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

*Id.* at 13. In comparison, Section 1956(a)(1)(B)(i) provided:

(a)

(1)    Whoever, knowing that the property involved in a
financial transaction represents the proceeds of
some form of unlawful activity, conducts or
attempts to conduct such a financial transaction
which in fact involves the proceeds of specified
unlawful activity—

. . .

> (B)   knowing that the transaction is designed in whole or in part—
>
>> (i)   to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

§ 1956(a)(1)(B)(i). And Section 1957(a) provided:

> Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

§ 1957(a). Because Counts 4S and 7S contain the elements of the charged offenses and track the relevant statutory language, they are legally sufficient. Thus, any argument on this ground by defense counsel would have been meritless. *See United States v. Lutcher*, No. CRIM.A. 03-338, 2009 WL 666767, at *4–5 (E.D. La. Mar. 10, 2009) (rejecting Lutcher's § 2255 claim that counsel was ineffective for failing to challenge the indictment because it was legally sufficient).

Second, the record refutes Nwosisi's contention that defense counsel was ineffective for failing to subject Diuno and "the government's witnesses or evidence to the adversarial test." Doc. 816-1 at 7–8. Nwosisi proceeded to trial—where his defense counsel expressly challenged the

Government's case as to Counts 4S and 7S, including subjecting Diuno and the Government's other witnesses to cross-examination and delivering argument. *See* Doc. 780 at 69–77 (cross-examination of Kim); Doc. 781 at 28–33 (cross-examination of Leeds); Doc. 781 at 72–76 (cross-examination of Elliott); Doc. 691 at 131–204 (cross examination of Diuno); Doc. 782 at 5–69, 91–98 (cross-examination of Diuno); Doc. 782 at 105–09 (cross-examination of Ferretiz); Doc. 691 at 9–14 (cross-examination of Vernia); Doc. 691 at 30–34 (cross-examination of Marroquin); Doc. 691 at 59–62 (cross-examination of Banda); Doc. 83–88, 93–95 (cross-examination of Randle); Doc. 692 at 6–39, 54–57 (cross-examination of Agent Spaulding); Doc. 693 at 63–93 (closing argument on behalf of Nwosisi).

Consequently, Nwosisi cannot meet his burden under either *Strickland* prong. First, he cannot show deficient performance. He is unable to overcome the "strong presumption" that defense counsel's performance fell within the "wide range" of reasonable professional assistance. *See Premo*, 562 U.S. at 121. Here, any challenge to the second superseding indictment would have been meritless, given that Count 4S and 7S were legally sufficient. *See United States v. Fields*, 565 F.3d 290,

296 (5th Cir. 2009) (holding that counsel is not deficient for failing to raise a meritless argument). Further, defense counsel subjected Diuno and the Government's other witnesses and evidence to thorough adversarial testing over the course of a five-day trial. Second, Nwosisi cannot show prejudice, meaning there is a reasonable probability that, but-for counsel's supposed errors, he would have been acquitted. *See Henderson*, 333 F.3d at 602. This also is established by the legal sufficiency of Counts 4S and 7S and defense counsel's actions at trial. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Nwosisi's second § 2255 claim fails.

**D.    Nwosisi's third claim fails.**

In his third § 2255 claim, Nwosisi asserts his defense counsel was constitutionally ineffective for failing to file a pretrial motion for a Bill of Particulars. Doc. 816-1 at 2–4, 8–11. He asserts that, with this Bill of Particulars, defense counsel would have "had the information needed to move for acquittal based on the sufficiency of evidence" and would have

"been able to challenge the indictment as being defective." *Id.* at 9. This § 2255 claim is unconvincing.

Under Federal Rule of Criminal Procedure 7(f), a court may order the government to file a Bill of Particulars. "The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution." *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977). But a Bill of Particulars "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980).

Here, Nwosisi fails to explain what a Bill of Particulars would have revealed; nor does he explain how he was surprised at trial or unable to prepare his defense against Counts 4S and 7S. *See United States v. Harper*, Crim. No. 09-279-13, 2018 WL 4291753, at * 4 (W.D. La. Sept. 6, 2018) (rejecting Harper's § 2255 claim of ineffective assistance because he did not explain "what a bill of particulars would have revealed").

Instead, Nwosisi asserts that, with a Bill of Particulars, defense counsel would have: (1) "had the information needed to move for acquittal based on the sufficiency of evidence"; and (2) "been able to challenge the indictment as being defective." Doc. 816 at 9. But these assertions are baseless. First, defense counsel did, in fact, move for a Rule 29 motion "ask[ing] the Court for a judgment of acquittal based on the fact that insufficient evidence has been submitted to sustain the elements required for both charges." Doc. 692 at 59. Second, as discussed, Counts 4S and 7S were legally sufficient.

Consequently, Nwosisi cannot meet his burden under either *Strickland* prong. First, he cannot show deficient performance. He is unable to overcome the "strong presumption" that defense counsel's performance fell within the "wide range" of reasonable professional assistance. *See Premo*, 562 U.S. at 121. Nwosisi does not explain what a Bill of Particulars would have revealed or how it would have aided him at trial. *See United States v. Druilhet*, No. 6:16-CR-183-04, 2023 WL 3219661, at *8–9 (W.D. La. Mar. 23, 2023), *report and recommendation adopted*, No. 6:16-CR-183-04, 2023 WL 3214613 (W.D. La. May 2, 2023) (rejecting Druilhet's § 2255 claim of ineffective assistance because a Bill

of Particulars "would not have provided him with any additional information" or "added anything" to his defense at trial). Further, his defense counsel made a Rule 29 motion following the Government's case-in-chief; and Counts 4S and 7S were legally sufficient. *See Fields*, 565 F.3d at 296; *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995). Second, Nwosisi cannot show prejudice, meaning there is a reasonable probability that, but-for counsel's errors, he would have been acquitted. *See Henderson*, 333 F.3d at 602. This also is established by: Nwosisi's failure to explain how a Bill of Particular would have aided him; defense counsel's Rule 29 motion at trial; and the legal sufficiency of Counts 4S and 7S. *See Kimler*, 167 F.3d at 893. Nwosisi's third § 2255 claim fails.

## E. Nwosisi's fourth claim fails.

In his fourth § 2255 claim, Nwosisi argues he is actually innocent of his convicted offenses. Doc. 816-1 at 11–12. This § 2255 claim is without merit.

A motion under § 2255 "may not do service for an appeal." *Frady*, 456 U.S. at 165. A defendant procedurally defaults a claim if he could have raised it on direct appeal but did not do so. *See Cervantes*, 132 F.3d at 1109. In this case, Nwosisi procedurally defaulted his actual-innocence

claim because he could have raised it on direct appeal but did not do so. Following sentencing, on June 13, 2024, Nwosisi, represented by counsel, timely filed a notice of appeal. Doc. 748. On September 4, 2024, Nwosisi, represented by counsel, filed an unopposed motion to dismiss the appeal.[7] On September 5, 2024, the Fifth Circuit granted Nwosisi's motion and dismissed his appeal. Doc. 813. Nwosisi confirmed that he withdrew his appeal so he could proceed with the instant § 2255 motion. *See* Doc. 816 at 2–3, 5. Because Nwosisi could have raised his actual-innocence claim on direct appeal but did not, he procedurally defaulted it. *See Carcamo-Robles v. United States*, No. 3:20-CR-185-E-10, 2023 WL 3587767, at \*5 (N.D. Tex. Mar. 24, 2023), *report and recommendation adopted*, No. 3:20-CR-00185-E-10, 2023 WL 3591678 (N.D. Tex. May 22, 2023) (concluding Carcamo-Robles procedurally defaulted her *Booker* and *Apprendi* § 2255 claim, even though the Fifth Circuit dismissed her direct appeal).

A procedurally defaulted claim, however, may be raised in a § 2255 motion if the defendant can demonstrate: (1) cause and actual prejudice; or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622

---

[7] Fifth Circuit Case No. 24-20267, Document Number 53.

(1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Here, Nwosisi fails to meet either requirement.

First, Nwosisi cannot show cause and actual prejudice, given that *he* timely filed a notice of appeal and then *he* filed a motion to dismiss his appeal, which the Fifth Circuit granted. *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) ("Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense.).

Second, Nwosisi cannot show actual innocence. "Actual innocence means 'factual innocence, and not mere legal insufficiency.' " *Jones*, 172 F.3d at 384 (quoting *Bousley*, 523 U.S. at 622). "To prove actual innocence, the petitioner 'must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (quoting *Bousley*, 523 U.S. at 622). Here, Nwosisi cannot meet this burden, given the overwhelming evidence presented by the Government at trial, including testimony by Agent Spalding, Diuno,

and multiple other witnesses. Indeed, Nwosisi does not directly challenge any of the Government's evidence at trial; his other § 2255 claims only allege ineffective assistance by his defense counsel regarding actions before trial. Nwosisi's fourth § 2255 motion fails.[8]

### F.    No evidentiary hearing is required.

An evidentiary hearing is unnecessary. A § 2255 motion may be resolved without an evidentiary hearing where the files, motion, and record of the case conclusively show that no relief is appropriate. *Santora*, 711 F.2d at 42. If the record is adequate to fairly dispose of the allegations, the court need not inquire any further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990). Under these circumstances, the court may deny a § 2255 motion without an evidentiary hearing and grant summary judgment for the Government. *See United States v.*

---

[8] To the extent Nwosisi separately alleges ineffective assistance by defense counsel for failing to argue actual innocence, this also fails. First, any such claim is conclusory. A defendant alleging ineffective assistance of counsel "must identify specific acts or omissions; general statements and conclusory charges will not suffice." *Knighton v. Maggio*, 740 F.2d 1344, 1349–50 (5th Cir. 1984). Here, Nwosisi entire allegation occurs in a single sentence: "Through the troves of emails and recordings where he proclaims his innocence, Counsel had an obligation and duty to chase after the truth." Doc. 816-1 at 12. Second, defense counsel acted reasonably by representing Nwosisi over a five-day trial, where he contested the Government's evidence and argued against Nwosisi's guilt as to Counts 4S and 7S. Third, as discussed, any claim of actual innocence would be meritless. And defense counsel cannot be ineffective for failing to raise a meritless claim. *See Fields*, 565 F.3d at 296; *Kimler*, 167 F.3d at 893.

*Batamula*, 823 F.3d 237, 239 (5th Cir. 2016) (en banc). In this case, on the existing record, this Court can conclude that these § 2255 claims should be denied without an evidentiary hearing.

### G.    No certificate of appealability should issue.

No certificate of appealability should issue. A defendant may obtain a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted). Here, for the reasons discussed above, reasonable jurists could not disagree with this Court's denial of these § 2255 claims.

## V.    Conclusion.

For the foregoing reasons, the United States respectfully asks this Court to deny Nwosisi's § 2255 motion, without an evidentiary hearing or certificate of appealability.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney
S.D. Tex. Bar No. 3337920
California Bar No. 310645
Attorneys for Respondent
1000 Louisiana Street, Ste. 2300
Houston, TX 77002
Phone: (713) 567-9102

## CERTIFICATE OF SERVICE

I, Andrew C. Sand, certify that a true and correct copy of the foregoing *United States' Response to Nwosisi's 28 U.S.C. § 2255 Motion* was electronically filed with the United States District Clerk for the Southern District of Texas and sent by certified mail, return receipt requested, on April 17, 2025, to the following:

Tochukwu Nwosisi
No. 16419-028
FMC Lexington
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512


Tochukwu Nwosisi
No. 16419-028
FCI Ashland
Federal Correctional Institution
P.O. Box 6001
Ashland, KY 41105


/s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney